UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA


| | | |
|---|---|---|
| MICHAEL GANTT and TRINA, GANTT, | : | CIVIL NO.  **1:06-CV-1354** |
| | : | |
| Plaintiffs | : | (Chief Judge Kane) |
| | : | |
| v. | : | (Magistrate Judge Smyser) |
| | : | |
| ABSOLUTE MACHINE TOOLS, INC. and ROUNDTOP MACHINERY INDUSTRIES, CO., LTD. | : | |
| | : | |
| | : | |
| | : | |
| Defendants | : | |


### REPORT AND RECOMMENDATION


     This is a products liability claim brought by Michael and
Trina Gantt following Michael Gantt's hand injury which occurred
while he was cutting metal parts using a lathe while in the
employment of Fulton Precision Industries, McConnellsburg, Fulton
County, Pennsylvania.  Two corporate defendants are named:
Absolute Machine Tools, Inc. ("Absolute"), an Ohio company, and
Roundtop Machinery Industries, Co., Ltd. ("Roundtop"), a Taiwan
corporation.  Diversity of citizenship is the jurisdictional
basis.  28 U.S.C. § 1332.  The complaint states claims of
negligence, claims under strict product liability principles and
claims of breaches of warranty by Michael Gantt against each
defendant and claims by Trina Gantt, his wife, of loss of
consortium against both defendants.


     The complaint was filed on July 10, 2006.  Defendant
Absolute filed an answer on August 11, 2006.  A case management

conference was held on September 15, 2006.[1]  Defendant Roundtop

filed an answer to the complaint on March 14, 2007.


Defendant Absolute filed a motion for summary judgment on

July 31, 2007. (Doc. 35).  A supporting brief was filed on August

10, 2007. (Doc. 42).  An opposing brief was filed by the

plaintiffs on August 29, 2007. (Doc. 44).  A reply brief was

filed on August 31, 2007. (Doc. 45). This Report and

Recommendation addresses the motion of defendant Absolute for

summary judgment.


Defendant Absolute argues in support of its summary judgment

motion that there

> . . . exists no genuine issue of material fact
> tending to establish that Absolute is liable
> to M. Gantt based upon (1) strict products
> liability, (2) negligence, and (3) breach of
> any implied duty of merchantability or fitness
> for a particular purpose and . . . exists no
> genuine issue of material fact tending to
> establish that Absolute is liable to plaintiff
> T. Gantt for loss of consortium.

(Doc. 42, page 6).


Summary judgment is appropriate if the "pleadings,

depositions, answers to interrogatories, and admissions on file,

together with the affidavits, if any, show that there is no

---

[1]  A second case management conference, participated in by defendant
Roundtop after that foreign corporation had waived service, was held on
January 17, 2007 and participated in by both defendants.  An Amended Case
Management Order was entered on January 17, 2007.

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). "The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact, though the non-moving party must make a showing sufficient to establish the existence of each element of his case on which he will bear the burden of proof at trial." *Huang v. BP Amoco Corp.*, 271 F.3d 560, 564 (3d Cir. 2001); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

"A factual dispute is material if it bears on an essential element of the plaintiff's claim, and is genuine if a reasonable jury could find in favor of the nonmoving party." *Natale v. Camden County Correctional Facility*, 318 F.3d 575, 580 (3d Cir. 2003). In determining whether an issue of material fact exists, the court must consider all evidence in the light most favorable to the non-moving party. *White v. Westinghouse Electric Co.*, 862 F.2d 56, 59 (3d Cir. 1988). "Our function at the summary judgment stage is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." *Federal Home Loan Mortgage Corp. v. Scottsdale Ins. Co.*, 316 F.3d 431, 443 (3d Cir. 2003).

The complaint alleges in material part that the Model ST-60B lathe manufactured by defendant Roundtop and sold to Fulton Precision Industries by defendant Absolute was designed and

3

intended to be used for precision cutting of metal parts.
Michael Gantt was using it for that purpose on July 14, 2005.
He was manually guiding a large metal workpiece which was
suspended by a crane, into the lathe.  He depressed a foot pedal,
to close the chuck of the lathe, so as to cause the workpiece to
be grasped by the lathe.  When the foot pedal was depressed, the
lathe's component piece known as its tailstock suddenly and
unexpectedly moved toward the workpiece and through Michael
Gantt's right hand, causing severe and permanent injuries.  The
complaint alleges that the defective design of the lathe was one
involving its tailstock's movement in response to particular
controls.  The tailstock fully extended toward the workpiece with
one tap of the foot pedal and jogged away in short increments
from the workpiece upon each one tap of the foot pedal.  The
complaint alleges that a non-defective lathe tailstock would work
in the opposite manner.  It would approach the workpiece in
incremental steps and would retract from the workpiece in one
step.  The complaint alleges that the latter set-up is the
ordinary industry practice, and that experienced lathe operators
expecting and anticipating the ordinary and customary set-up are
vulnerable to injury when operating a lathe having a set-up such
as this lathe has.  The complaint also alleges other, related
theories of product defectiveness and danger in the lathe,
including that there is not a hood or guard mechanism on the
multiple foot pedal machine to prevent a machine operator from
inadvertently activating the wrong foot pedal while operating the

machine and also that there are not appropriate and adequate warnings addressing the tailstock movement.

As stated by the Court in *Pavlik v. Lane Ltd./Tobacco Exporters Intern.,* 135 F.3d 876, 881 (3d Cir. 1998):

> The Pennsylvania Supreme Court, whose law we are bound to follow as a court exercising diversity jurisdiction, has adopted § 402A of the Restatement (Second) of Torts, which imposes strict liability on the purveyor of a product in a defective condition "unreasonably dangerous to the user or consumer." *See Webb v. Zern,* 422 Pa. 424, 220 A.2d 853 (1966). Under § 402A, an otherwise properly designed product may still be unreasonably dangerous (and therefore "defective") for strict liability purposes if the product is distributed without sufficient warnings to apprise the ultimate user of the latent dangers in the product. *See Davis v. Berwind Corp.,* 547 Pa. 260, 690 A.2d 186, 190 (1997).

> To recover under § 402A, a plaintiff must establish: (1) that the product was defective; (2) that the defect was a proximate cause of the plaintiff's injuries; and (3) that the defect causing the injury existed at the time the product left the seller's hands. *See Id.* (citing *Berkebile v. Brantly Helicopter Corp.,* 462 Pa. 83, 337 A.2d 893, 899 (1975)). In the context of a failure to warn case, to satisfy the second prong, the plaintiff must establish that it was the total lack or insufficiency of a warning that was both a cause-in-fact and the proximate cause of the injuries. *See Greiner v. Volkswagenwerk Aktiengeselleschaft,* 540 F.2d 85 (3d Cir.1976); *Conti v. Ford Motor Co.,* 743 F.2d 195, 197 (3d Cir.1984). While the question of causation in Pennsylvania is normally for the jury, "if the relevant facts are not in dispute and the remoteness of the causal connection between the defendant's negligence and the plaintiff's injury clearly appears, the question becomes one of law." *Conti,* 743 F.2d at 197-98 (quoting *Liney v. Chestnut Motors, Inc.,* 421 Pa. 26, 218 A.2d 336, 338 (1996)).

A court applying Rule 56 of the Federal Rules of Civil Procedure must ascertain whether there is a genuine dispute as to material facts.  This court has enacted LR 56.1 to structure a party's summary judgment legal and factual theory into a format that permits and facilitates the court's direct and accurate consideration of the motion.  However, here the moving party, defendant Absolute, has not filed a LR 56.1 statement of the material facts which (it would submit) are not "in genuine dispute" within the meaning of Rule 56 of the Federal Rules of Civil Procedure.  Absolute's motion contains thirty seven numbered paragraphs containing statements of fact and also containing some legal arguments.  Assuming *arguendo* that these numbered paragraphs were to be considered to be intended to be a LR 56.1 statement, they do not meet the requirements of LR 56.1 and therefore are not acceptable as a LR 56.1 statement.  They are not identified as a LR 56.1 statement, the "statement" is not separate from the motion as LR 56.1 requires and, substantively, these paragraphs do no contain statements of material facts.

A material fact is a fact that is a necessary factual component of the summary judgment theory being advocated by the moving party or that is a necessary factual component of the non-moving party's position that summary judgment should not be granted for the moving party.  Rather than stating material facts, the numbered paragraphs in the defendant's motion state

6

evidentiary facts.  They state what witnesses have "stated" or
have "acknowledged," what plaintiffs "have submitted," and what a
report "states," "concludes" or "suggests."  A party moving for
summary judgment is contending that, as to a set of material
factual matters, there is no genuine dispute.  To make that
assertion as to a particular material fact, the party must have
considered the available evidence and have determined that there
is not evidence that supports the opposing party's position on the
material factual question.  Summary judgment is not appropriate
when the moving party and the opposing party both have evidence
supporting that party's position as to a material factual issue.
To state that a witness has stated a certain fact does not show to
the court that the attorney for the moving party has analyzed all
of the evidence and has in good faith determined that as to a
particular material factual component of the factual theory
underlying the moving party's summary judgment theory a sound
argument is reasonably made that there is not evidence from which
a reasonable jury could draw an inference that is inconsistent
with the factual inference embodied in the moving party's
statement of the particular material fact being stated.  The mere
statement of what a particular piece of evidence (i.e., a
particular factual assertion of a particular witness) is does not
advance the summary judgment analysis.  LR 56.1 calls upon counsel
to analyze all potentially available summary judgment evidence, to
identify relevant inferences of fact that can be drawn from
certain items of evidence alone or in combination, to consider the

evidence that may support a materially conflicting inference, and
to determine what material statements of fact can reasonably be
advanced to the court as being not genuinely in dispute.  The
absence of an adequate LR 56.1 statement of material facts means
that the court must determine the particular underpinnings of a
moving party's summary judgment theory without having them
presented and therefore invites the court to decide that case on
the basis of factual and legal arguments that both sides may not
have known were to be presented and considered.

The motion for summary judgment should be denied because the
moving party had not filed a LR 56.1 statement of material facts
not genuinely in dispute.  It is recommended that it be denied on
that basis.  We will, nevertheless, move on to the merits of the
moving party's arguments despite the absence of an adequate LR
56.1 statement.  Having considered these arguments and the summary
judgment documentary evidence filed by the parties, we conclude
that the moving defendant has not shown by its motion that it is
entitled to summary judgment as to the plaintiffs' causes of
action for injuries caused by a defective product or as to the
plaintiffs' other causes of action.  It is not shown to be free
from genuine dispute that the product was not defective, that it
was not a proximate cause of Michael Gantt's injuries, or that the
putative defect did not exist in the product when it left the
defendant's hands.  The plaintiffs' evidence, if accepted by the
fact finder can establish that the lathe as it was set up by the

8

defendant before its sale was defective and that the defect, the
uncustomary tailstock quill operating set-up, was the cause of
Michael Gantt's injuries.

The plaintiffs' evidence includes the statement of a fellow
employee, Kevin Shives, who states in his deposition that

> [m]ost quills only come out as long as your
> foot is on that switch and as soon as you let
> go of the switch it stops.  That particular
> machine the quill comes out the whole way
> whenever you step on the switch, the quill
> being the part of the tailstock that creates
> the thrust.

(Doc. 44, Exhibit 4).

The plaintiffs' theory of defectiveness in the Johnford
Model ST-60B CNC (computer numerical control) lathe manufactured
by Roundtop Machinery Industries is stated in detail in the
report of David J. Bizzak dated July 11, 2007.

> . . . [C]ommon industry practice is to provide
> a stepped, hold-to-run control for advancing
> the quill outward (extending the quill.)  Such
> a control scheme is intuitive because the
> operator mounting a work piece in the lathe
> may momentarily manually support the tail end
> of the work piece after the head-end has been
> placed in the chuck.  Then, as the quill is
> slowly advanced, the operator may make any
> necessary adjustment to the workpiece to
> ensure that the tailstock quill contacts the
> center of the workpiece.  In such a mounting
> scenario, stepped movement of the quill is
> preferable to single-movement extension of the
> quill to permit any required repositioning of
> the workpiece.  Additionally, it may be noted
> that single-movement extension is undesirable
> because it creates the potential for injury

should any portion of an operator's body be positioned between the quill and workpiece at the time the quill is advanced.   In such a situation, single-movement extension of the quill can trap an operator's hand or some other portion of his body between the quill and workpiece.

As opposed to the stepped movement of the quill out control, retraction-or quill in-control is commonly accomplished via either a single depression of the control that results in a single-movement retraction or a hold-to-run control in which the quill retracts at a controlled rate. Because the QUILL IN control is typically actuated after the completion of a machining operation, it is desirable to quickly achieve full retraction of the quill to provide sufficient clearance for the operator to unchuck and remove the finished workpiece from the lathe.   It may also be noted that such movement of the quill, even if achieved with a single depression of the control, does not present the potentional for trapping of an operator's hand or other body part. Thus, it does not require the precise control of the QUILL OUT function.

The 2001 version of the ANSI B11.6 recognizes the historical and common industry practice of utilizing a hold-to-run control for extension of a power-operated quill.  That is, section 6.17.2 states "[a]ny power-operated tailstock quill shall be manually operable by hold-to-run control with a maximum speed of 20 mm/sec (0.8 in/sec)."  Contrary to this requirement, as well as common industry practice prior to the issuance of ANSI B11.6-2001, the tailstock QUILL OUT control on the subject Johnford ST-60B CNC lathe utilizes a foot pedal switch in which a single depression results in the extension of the quill to either its full extent of travel or its preset thrust limit.

Regardless of whether any design standards existed to specify the manner in which the tailstock quill control should operate, the designer of any machine must consider the manner in which the operator will interface with the machine to identify potential hazards.  In this particular,

10

instance, trapping of a portion of an
operator's body by machine movement has been
long recognized as a potential hazard that may
lead to serious injury. Consistent with
general machine design requirements, a
designer has an obligation to identify hazards
and address these hazards, in decreasing order
of preference, 1) by eliminating the hazard
throughout the design, 2) by providing
safeguards or guarding to protect
operators/users from injury or 3) by warning
the user of the hazard and providing
appropriate guidance or instructions on means
to avoid injury. With respect to the trapping
hazard posed by inadvertent movement of the
tailstock quill, this hazard could have been
readily addressed by using a hold-to-run
control scheme to manage QUILL OUT movement.
Given the manner in which the tailstock quill
is utilized by an operator, as well as the
industry practice and norm for tailstock quill
control, there is no basis to conclude that
hold-to-run switch for control of the QUILL
OUT function would have compromised the
utility and/or efficiency of the subject
lathe.

(Doc. 44, Exhibit 5).


The defendant Absolute argues that the characterization of

the one-step tailstock extension operation of this particular

lathe as defective is incorrect because the tailstock quill

extension operation of the lathe can be set by the company or by

the operator to go forth by successive steps (as the other lathes

in use at Fulton Precision are set) or can be set as is this

lathe to be in one step. "The operation of the quill in this

matter [sic] was a matter of customer preference and solely

within the control of the customer, Fulton Precision. The timing

of the quill could be changed through simple adjustments of the

11

program." (Doc. 45, page 2).  Absolute supports this position by
reference to a copy of the operations manual for the lathe and an
expert report.  Absolute does not explain, and we have no
apparent basis to reliably infer a reason, why the lathe
manufacturer would produce machines that incorporate this option,
to reliably determine usefulness of the optional non-incremental
extending quill, to know the reason for the manufacturer's
default setting or to know the reason for the differing settings
of Fulton Precision's lathes.  Defendant Absolute does not
demonstrate the absence of any genuine dispute as to any material
fact(s) as to whether there was an adequate warning given by
Absolute relating to the default quill movement setting(s).

    A change in a product's design from a previous design, when
the changed design may create a danger for an unexpecting user
accustomed to the prior design, may result in a product that is
dangerous if adequate warnings of the changed design are not
provided.

    David J. Bizzak's report, quoted above, states that the
lathe was defectively designed, in that the lathe's tailstock
quill operated with a single-movement extension that was contrary
to common industry practice of an operation in a stepped-movement
extension. (Doc. 44, Exhibit 5).  The plaintiffs theory of
product liability is based also in part upon the absence of a
warning to the operator to anticipate the different quill

operation*.  See Shouey ex rel. Litz v. Duck Head Apparel Co.,
Inc*. 49 F.Supp.2d 413, 422 (M.D.Pa. 1999).

The defendant asserts that the plaintiffs are advancing an
impermissible product liability theory that is based upon a
variance from industry standards, which is not a permissible
basis to support an inference that a machine is defective.
However, the plaintiffs' expert's opinion is not based directly
or inherently upon a variance from industry standards, but is
based rather principally upon a variance from industry users'
expectations, which is a different basis.  Product users'
expectations are relevant when they are a factor that may be seen
to render the product dangerous.  Here, moreover, apart from the
user's expectation that the advancement of the tailstock quill
will be incremental and apart from the increased risk of injury
resulting from a user's lack of guardedness against a non-
incremental extension, the plaintiffs present the theory that
there is inherit danger without incremental extension simply
because it provides less control to the user at a time when user
control would permit an opportunity to stop the possible
encroachment of the tailstock upon a misplaced operator's hand.

The defendant has not shown there not to be a genuine issue
of fact as to whether the non-incremental movement of the lathe's
tailstock upon the depression of the foot pedal operating that
movement is inherently dangerous or as to whether adequate

warnings about that movement in the product were given.
Therefore, it is recommended that the defendant's motion for
summary judgment as to the product liability claims be denied.

Addressing the negligence claim, Absolute asserts that no
genuine issue exists, *inter alia*, as to whether Absolute failed
to exercise due care concerning the sale, delivery or
installation of the lathe.  But, in the light of the critical
nature of the difference as between two potential tailstock quill
operations, and the possibility that persons accustomed to one
form of operations will be endangered without adequate warning of
the differing controls in the subject lathe, it can not be
correctly said on this record that no reasonable inference can be
drawn that here there were not adequate warnings given as to the
operations of this lathe.

The defendants has not argued that there is an independent
basis for summary judgment in its favor as to the other claims.
It is recommended that the motion for summary judgment be denied
in its entirety.

                                        */s/ J. Andrew Smyser*
                                        J. Andrew Smyser
                                        Magistrate Judge

Dated:  September 13, 2007.